UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on May 11, 2006

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL No.: |
| | : | |
| | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1344 |
| | : | (Bank Fraud); |
| | : | 22 D.C. Code §§ 3211(b)(2), 3212(a) |
| v. | : | (Theft in the First Degree) (Count 11); |
| | : | 22 D.C. Code §§ 3221(a), 3222(a)(1) |
| | : | (Fraud in the First Degree) (Count 12); |
| | : | 18 U.S.C. § 982 |
| | : | (Criminal Forfeiture) |
| | : | |
| TERRY DAVIS, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

## INDICTMENT

The Grand Jury charges that:

Introduction

At all times relevant to the indictment:

1.  Phi Beta Sigma Fraternity, Inc., (hereafter "PBS" or "the fraternity") was a fraternal organization founded in 1914, with college and alumni chapters established nationwide, as a general educational and community service organization.

2.  The affairs of PBS were governed by a national board of seventeen individuals, eight of whom were elected officers, including a National Treasurer and a National President. Elected officers are chosen every two years at national meetings of the PBS, called "conclaves."

Additionally, PBS employed a professional staff at its headquarters in Washington, D.C., for the purpose of the day-to-day administration of the affairs of the fraternity. This professional staff was headed by the National Executive Director.

3. PBS received its operating capital generally through the assessment of member's dues and other assessments. Such funds were then deposited into a general fund account, located at the Industrial Bank in Washington, D.C., and at an account at First Union Bank in Virginia. The task of collecting the receipts and depositing them into the general fund account was performed by professional staff members of the fraternity at its headquarters in Washington, D.C.

4. Legitimate expenses of the fraternity were paid after a voucher was prepared by the professional staff, detailing the item to be paid. As a general financial control, the vouchers were then required to be approved in writing by three individuals: the Executive Director, the National Treasurer, and the National President. After the vouchers were approved, the National Treasurer would prepare a check, using the Industrial Bank general fund account, to pay the expense. As a fraud prevention measure, each check required two signatures, that of the National Treasurer and that of the National President. After preparing and signing the check, the National Treasurer was required to forward the check to the National President for his signature. The National President would then route the check to the national headquarters in Washington, D.C. for mailing.

5. Defendant TERRY DAVIS was elected as National Treasurer by the general membership at the 1999 national conclave and was reelected to a second, two-year term in 2001.

6. The deposits of Industrial Bank and First Union Bank were at all times insured by the Federal Deposit Insurance Corporation.

Case 1:06-cr-00193-RBW    Document 2    Filed 06/29/2006    Page 3 of 6

The Scheme

7. Between from at least January 2001 to about June 2003, in the District of Columbia and elsewhere, the defendant, TERRY DAVIS, knowingly engaged in a scheme and artifice to defraud a financial institution, and to obtain money belonging to and under the custody and control of financial institutions, by means of false and fraudulent pretenses, representations, and promises.

Means and methods

8. Beginning on or about January 2001 and continuing to approximately June 2003, defendant TERRY DAVIS, without the authorization or knowledge of the responsible members or staff of PBS, would steal money from the PBS general fund account at the Industrial Bank in Washington D.C., and at another account held by PBS at First Union, by writing checks to cash, which he would then negotiate by means of his personal account at the Bank of America. In order to circumvent the requirement of a second signature of the National President, defendant TERRY DAVIS would present checks containing the forged signature of the National President, or simply negotiate the check without the required second signature. Moreover, defendant TERRY DAVIS would have the monthly account statements of the PBS accounts, which would reflect the defendant's checks to cash, sent to his home address in Virginia in order to prevent detection.

9. As part of the scheme to defraud, defendant TERRY DAVIS wrote approximately $340,000 in checks to cash to which he was not entitled, which he deposited into his personal account or converted to cash or other instruments. This money was then used for his personal benefit.

10. As part of the scheme to defraud, defendant TERRY DAVIS would often falsely represent, on the memo line of the checks, as well as to responsible officials at PBS, that checks to

3

cash were written to fund legitimate PBS activities and funds transfers, whereas, as the defendant well knew, the checks were used for his own personal benefit.

## COUNTS ONE THROUGH TEN
(Bank Fraud)

11. Between from at least January 2001 to approximately June 2003, in the District of Columbia and elsewhere, in order to carry out the aforementioned scheme and artifice to defraud, defendant TERRY DAVIS committed the following acts, among others:

| Count | On or about Date | Transaction |
|---|---|---|
| 1 | January 29, 2001 | check 2003, Industrial Bank, payable to cash |
| 2 | November 5, 2001 | check 2091, Industrial Bank, payable to cash |
| 3 | January 25, 2002 | check 2173, Industrial Bank, payable to cash |
| 4 | January 29, 2002 | check 2171, Industrial Bank, payable to cash |
| 5 | February 5, 2002 | check 2190, Industrial Bank, payable to cash |
| 6 | April 17, 2002 | check 2247, Industrial Bank, payable to cash |
| 7 | December 30, 2002 | check 3177, Industrial Bank, payable to cash |
| 8 | January 2, 2003 | check 3179, Industrial Bank, payable to cash |
| 9 | April 30, 2003 | check 3239, Industrial Bank, payable to cash |
| 10 | May 12, 2003 | check 3313, Industrial Bank, payable to cash |

**(Bank Fraud, in violation of Title 18, United States Code, Section 1344)**

## COUNT ELEVEN - THEFT IN THE FIRST DEGREE

1. Paragraphs one through ten of this Indictment are realleged and incorporated by reference as if set out in full.

2. From between on or about January 2001, until in or about June 2003, in a continuing course of conduct, in the District of Columbia, defendant TERRY DAVIS wrongfully obtained over

$250 in monies from Phi Beta Sigma Fraternity with the intent to appropriate the property to his own use.

**(Theft in the First Degree, in violation of Title 22, District of Columbia Code, Sections 3211(b)(2) and 3212(a) and Section 1805)**

### COUNT TWELVE - FRAUD IN THE FIRST DEGREE

1. Paragraphs one through ten of this Indictment are realleged and incorporated by reference as if set out in full.

2. From between on or about January 2001, until in or about June 2003, in a continuing course of conduct, in the District of Columbia, defendant TERRY DAVIS, engaged in a scheme and systematic course of conduct with intent to defraud and to obtain property of Phi Beta Sigma Fraternity for himself by means of false or fraudulent pretenses, representations, and promises, and thereby obtained property of a value of $250 or more belonging to Phi Beta Sigma Fraternity.

**(Fraud in the First Degree, in violation of Title 22, District of Columbia Code, Sections 3221(a) and 3222(a)(1) and Section 1805)**

### FORFEITURE ALLEGATION

1. Upon conviction of one or more of the offenses alleged in Counts One through Ten of this Indictment, defendant TERRY DAVIS shall forfeit to the United States pursuant to 18 U.S.C. § 982 any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation(s), including but not limited to the following:

2. A sum of money equal to $340,000 in United States currency, representing the amount of proceeds obtained as a result of the offense of bank fraud, in violation of Title 18, United States Code, Section 1344.

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL


FOREPERSON



ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA