UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim No. 06-193 (RBW) |
| : | |
| TERRY DAVIS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF OFFER TO
COMPROMISE OR SETTLE UNDER RECENTLY AMENDED RULE 408**

The United States, through undersigned counsel, files its opposition to defendant Terry Davis's motion *in limine* to exclude evidence of offer to compromise or settle under recently amended Rule 408 ("Def. Mot."). As demonstrated further below, the statements at issue are not covered by Rule 408 and, alternatively, are properly admitted under Rule 408(b) as relevant evidence of the Defendant's obstruction, consciousness of guilt, and continued fraudulent conduct.

**FACTS**

From July 1999 through June 2003, the defendant Terry Davis was the elected National Treasurer of Phi Beta Sigma, an international fraternity. In that role, he had responsibility for the management of all funds entrusted to the fraternity. The fraternity had two anti-fraud provisions in place to prevent embezzlement and unauthorized expenditures: first, all expenses were to be approved by the National Treasurer, the National President, and the National Executive Director of the fraternity. Second, all fraternity checks required two signatures: one from the National Treasurer and one from the National President. From January 2001 to 2003, Davis wrote unauthorized checks out of the fraternity's operating account to cash, which he then

deposited into his personal bank account and spent as if it were his own money. He did so by forging the required second signature of the fraternity's National President or simply negotiating checks with only one signature. In order to disguise the fraud, Davis would often, but not always, falsely write in the memo line of the check that the money was for a payroll transfer.

Mr. Davis is charged with ten counts of bank fraud, in violation of 18 U.S.C. §1344, one count of theft in the first degree under the District of Columbia Code, in violation of 22 D.C. Code §3211(b)(2), and one count of fraud in the first degree, in violation of 22 D.C. Code §3221(a).

At issue in the instant Motion are statements by the Defendant and one of his fraternity brother, Jimmy Hammock, after the fraternity had detected some, but not all, of the checks to cash. The Government expects the evidence to show that Mr. Hammock had a conversation with Mr. Davis about the checks to cash that Mr. Davis had written on the fraternity's account sometime between the fraternity's national election (or "conclave") in July 2003 and August 2003. *See* Def. Mem. at 2 (quoting FBI FD-302, Notes of Interview of Jimmy Hammock, at p. 2 (Jan. 8, 2004)). The Government expects to show that the impetus for the conversation was Mr. Hammock "confront[ing] DAVIS about the checks made payable to cash and DAVIS' explanation the money was deposited to the payroll account." *Id.* The Government also expects the evidence to show that Mr. Davis and Mr. Hammock together made seven statements during that conversation in the following order:

(1)    Mr. Davis told Mr. Hammock that the money from the checks to cash had been deposited into the fraternity's payroll account ("Statement 1");

(2) Mr. Hammock told Mr. Davis that Mr. Davis's explanation that the checks to cash had been deposited by the defendant into the fraternity's payroll account was demonstrably false ("Statement 2");

(3) Mr. Davis then "unexpectedly said 'what will it take to make this go away'" ("Statement 3");

(4) Mr. Hammock told Mr. Davis that Mr. Davis needed to repay "whatever you took" ("Statement 4");

(5) Mr. Davis asked Mr. Hammock "what if I split the $29,000?" ("Statement 5");

(6) Mr. Hammock told Mr. Davis that the amount of missing money was in excess of $100,000 ("Statement 6"); and

(7) Mr. Davis told Mr. Hammock that Mr. Davis "can't pay that much" ("Statement 7").

*Id.*

## ARGUMENT

### RULE 408 DOES NOT PRECLUDE ADMISSION OF THE STATEMENTS

The Defendant's contention that "[t]he entire conversation is covered" by Rule 408, *see* Def. Mem. at 3, is without merit. As demonstrated below, the Statements are not covered by Rule 408 because there was no "valuable consideration" at issue and, moreover, Statement 1 and Statement 2 were not evidence of the Defendant offering to compromise a claim. In addition, to the extent any of the Statements fall within the purview of Rule 408, they are admissible under Rule 408(b) to prove obstruction, consciousness of guilt, and continued fraudulent conduct by the Defendant.

3

I.  **Rule 408 does not apply to the Statements.**

   A.  **Rule 408 does not apply to the Statements because the Defendant offered no valuable consideration.**

To apply, Rule 408(a) requires, among other things, evidence of "furnishing or offering to furnish – or accepting or offering or promising to accept – a *valuable consideration* in compromising or attempting to compromise the claim." Rule 408(a) (emphasis added). The Defendant's attempt to bring the Statements within Rule 408(a) fails for lack of consideration because, having taken the fraternity's money for his own use, any offer to repay those funds, which he already had a duty to do, cannot constitute valuable consideration under Rule 408. *See Carmichael v. Government of the Virgin Islands*, No. Crim. A. 2002/164, 2004 WL 3222756 (D.V.I. Nov. 29, 2004).

In *Carmichael*, the defendant-office manager was charged under the laws of the Virgin Islands with fraudulently cashing twenty-seven checks of her employer, the Caribbean Allergy Center ("CAC"). Upon being initially confronted about the fraud by the CAC, the defendant offered to repay the money, which at the time was calculated to be approximately $10,000. The defendant paid the $10,000, but the CAC subsequently determined that the actual total due was $12,000. The defendant never repaid the remaining $2000. The criminal charges were filed against the defendant after she had re-paid the $10,000. *Id.* at *1. At her criminal trial, the defendant sought to exclude the evidence of her restitution payments to the CAC under Rule 408. The trial court (the Territorial Court of the Virgin Islands) held that the defendant's repayment was not a compromise settlement and, alternatively, that the repayment fell within the exception to Rule 408(b) that does not protect efforts to obstruct a criminal prosecution. *Id.* at *6.

4

On appeal, the District Court upheld the admission of the restitution payments. The court held that Rule 408 did not apply to the restitution payments because the defendant had provided no consideration to the CAC in return for the payments. *Id.* at **7-8 (consideration "requires a performance or a return promise that has been bargained for") (citing Restatement (Second) of Contracts § 71 (1981)). The court held that because the defendant took the "CAC's funds for her own use, any agreement to repay those funds, which she already had a duty to do, cannot constitute valuable consideration under Rule 408." *Carmichael*, 3222756 WL at **7-8. As the court recognized, "performance of a preexisting legal duty 'which is neither doubtful nor the subject of honest dispute is not consideration.'" *Id.* at *7 (quoting Restatement (Second) of Contracts § 71).

Similarly, here, the Government expects the evidence to show that Mr. Davis's obligation to re-pay the fraternity its money was "neither doubtful nor the subject of honest dispute." *Id.* The Defendant's statement to Mr. Hammock that the Defendant purportedly transferred the proceeds from the checks to cash into the fraternity's payroll account is demonstrably false. That is, the bank records demonstrate that transfers from the fraternity's operating account to its payroll account were by wire transfers and not by cash deposits. Thus, absent some evidence by the Defendant of a genuine dispute about the Defendant's obligation to repay the moneys, *see* Rules 104(a) and 104(b), the Defendant will not be able to comply with the prerequisite under Rule 408(a) that he offered "valuable consideration" to the fraternity in making any purported compromise settlement to Mr. Hammock.

### B. Rule 408 does not apply to Statement 1 and Statement 2 because they were not made in the context of compromise negotiations.

Even assuming the Defendant offered valuable consideration to the fraternity, Rule 408 would nevertheless still not apply to Statement 1 and Statement 2. To apply, Rule 408(a) also generally requires that a statement consist of evidence of compromise negotiations. As stated above, the Government expects the evidence to show that the impetus for the conversation between Messrs. Davis and Hammock was for Mr. Hammock to confront Mr. Davis about Mr. Davis's statement that Mr. Davis had transferred the proceeds from the checks to cash into the fraternity's payroll account. Mr. Hammock, at that time of the disputed conversation, was apparently still engaged in fact-finding related to the checks. He was, in short, not engaging in compromise negotiations with the Defendant when Statements 1 and 2 were made. Mr. Hammock's lack of intent to engage in compromise negotiations when Statements 1 and 2 were made is evidenced by Statement 3, when Mr. Davis, according to Mr. Hammock, "unexpectedly" made a statement about making the matter "go away." Even assuming that Statement 3 "unexpectedly" moved their discussion into the purview of Rule 408, the Defendant may not bootstrap Statements 1 and 2 into that Rule. Because Statements 1 and 2 were not made during compromise negotiations, Rule 408 does not apply to them. *See Mendelovitz v. Adolph Coors Co.*, 693 F.2d 570, 580 (5th Cir. 1982) (Rule 408 excludes only evidence of conduct and statements made solely as part of the settlement negotiations, and not statements and conduct that are made at a meeting not related to settlement negotiations).

## II.     The Statements are admissible under Rule 408(b).

Even assuming that Rule 408 applies to any (or all) of the Statements, they may properly be admitted under Rule 408(b) as evidence of obstruction, consciousness of guilt, and continued fraudulent conduct by the Defendant.

The Statements are admissible under Rule 408(b) as evidence of obstruction. Rule 408(b) provides, in pertinent part, that Rule 408 "does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a)," and states that such a "permissible purpose[]" includes "proving an effort to obstruct a criminal investigation or prosecution." *See also* Rule 408, advisory committee's note to 1972 Proposed Rules ("An effort to 'buy off' the prosecution or a prosecuting witness in a criminal case is not within the policy of the rule of exclusion. McCormack § 251, p. 542."); *Gale v. United States*, 391 A.2d 230, 235 (D.C. 1978).

The decision in *Gale* is instructive here. In *Gale*, the defendant's burglary victims testified that the defendant – through his attorney – voluntarily paid restitution to the victims. On appeal, the defendant contended that the voluntary payments were covered by Rule 408. The court characterized the defendant's contention as "patently frivolous." *Gale*, 391 A.2d at 235. The court recognized "that '(a)n offer by the accused to pay money to 'buy off' the prosecution witness and stifle prosecution . . . is not within the policy of encouraging compromises, and hence is not usually regarded as privileged.'" *Gale*, 391 A.2d at 235 (quoting McCormick, Evidence § 274 at 665 (2d ed. 1972)).

Likewise, here, the jury may reasonably infer from the Statements that the Defendant's attempt to make any civil claim "go away" by offering to buy off the fraternity was an effort by the defendant to eliminate (or at least make less likely) any potential criminal liability by settling

the civil liability. At the time of the conversation, the Defendant knew better than anyone the extent of his conduct. The jury may reasonably infer that the Defendant's unilateral attempt to mollify his fraternity brothers by offering to repay some of the money may have been designed to "buy off" his fraternity brothers and make it less likely that they would call in the criminal authorities.

In addition, the Statements are admissible as relevant to and probative of consciousness of guilt. *See Gale*, 391 A.2d at 235. The *Gale* court recognized that "evidence of restitution, like that of other post-crime conduct such as flight, concealment, or intimidation of a witness, is ordinarily admissible as relevant to and probative of consciousness of guilt." *Id.* Moreover, "such behavior may, in a criminal case, be regarded as an admission by conduct." *Gale*, 391 A.2d at 235.

Here, this consciousness of guilt evidence is particularly probative. At the time of the conversation, the Defendant apparently believed that the fraternity was only aware of $29,000 in fraudulent checks. *See* Statement 5 (Mr. Davis asked Mr. Hammock "what if I split the $29,000?"). The Defendant, however, was in the best position to know that the checks he had written to cash greatly exceeded $29,000 and, in fact, exceeded $239,000. He also was in a position to know that his statement to Mr. Hammock that the Defendant had transferred the money from the checks into the fraternity's payroll account was false. As a result, the Defendant's material omission about the amount of money he took (Statement 5) and his false exculpatory statement about what he did with the money (Statement 1) are probative of the Defendant's continuing efforts to mislead the fraternity about the scope and nature of his fraudulent conduct. The Advisory Committee specifically noted in the newly amended Rule 408

that such continuing fraudulent conduct falls outside the purview of Rule 408. Rule 408, advisory committee note to 2006 amendment ("Rule 408 is inapplicable if offered to show that a party made fraudulent statements in order to settle a litigation").[1]

## CONCLUSION

For the foregoing reasons, the Defendant's motion *in limine* to exclude evidence of offer to compromise or settle under recently amended Rule 408 should be denied.

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: _____
Michael K. Atkinson
ASSISTANT UNITED STATES ATTORNEY
555 Fourth Street, N.W., Room 5915
Washington, D.C. 20530
Ph. (202) 616-3702
Fax (202) 307-2304

DATED: April 22, 2007

---

[1] Given these permissible purposes in seeking admission of the Statements, any purported danger of unfair prejudice does not substantially outweigh their probative value. *See Beck v. United States*, 140 F.2d 169, 170 (D.C. Cir. 1943) ("it is well settled that any act or statement of the accused tending to show consciousness of guilt, including false statements made in an attempt to explain unfavorable acts, is admissible against him").

## CERTIFICATE OF SERVICE

      I hereby certify that on this 22nd day of April 2007, I served via facsimile a copy of the above-referenced Opposition of the United States to the Defendant's Motion *in limine* to exclude evidence of offer to compromise or settle under recently amended Rule 408 and proposed Order on the following counsel of record:

Tony Axam, Jr., Esquire
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
Fax: (202) 208-7515

Christopher R. Cooper, Esquire
Joshua A. Klein, Esquire
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Fax: (202) 639-7832

 

_____
Michael K. Atkinson
Assistant United States Attorney