UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Crim No. 06-193 (RBW) |
| : | |
| TERRY DAVIS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM OF LAW REGARDING
HEARSAY TESTIMONY BY THE DEFENDANT'S SPOUSE**

The United States of America, through its attorney, the United States Attorney for the District of Columbia, hereby provides the Court with the following memorandum of law regarding potential hearsay testimony by the spouse of the defendant, Terry Davis.

**FACTS**

From July 1999 through June 2003, the defendant Terry Davis was the elected National Treasurer of Phi Beta Sigma, an international fraternity. In that role, he had responsibility for the management of all funds entrusted to the fraternity. The fraternity had two anti-fraud provisions in place to prevent embezzlement and unauthorized expenditures: first, all expenses were to be approved by the National Treasurer, the National President, and the National Executive Director of the fraternity. Second, all fraternity checks required two signatures: one from the National Treasurer and one from the National President. From January 2001 to 2003, Davis wrote unauthorized checks out of the fraternity's operating account to cash, which he then deposited into his personal bank account and spent as if it were his own money. He did so by forging the required second signature of the fraternity's National President or simply negotiating

checks with only one signature. In order to disguise the fraud, Davis would often, but not always, falsely write in the memo line of the check that the money was for a payroll transfer.

Mr. Davis is charged with ten counts of bank fraud, in violation of 18 U.S.C. §1344, one count of theft in the first degree under the District of Columbia Code, in violation of 22 D.C. Code §3211(b)(2), and one count of fraud in the first degree, in violation of 22 D.C. Code §3221(a).

At issue is testimony that the Defendant seeks to elicit from his spouse, Rhonda Davis. The government understands that the Defendant seeks to elicit the following testimony from his wife:

(1) Mr. Davis received bills from the fraternity or vendors for fraternity expenses;

(2) Mr. Davis wrote checks on the fraternity's account(s) or on his personal bank account(s) to pay fraternity expenses;

(3) Mr. Davis purchased money orders to pay fraternity expenses;

(4) Mr. Davis mailed the checks he wrote or money orders he obtained for the fraternity's expenses to the fraternity's vendors.

The Statements at issue, therefore, appear to constitute two types of evidence: (1) evidence that the bills, checks, money orders and envelopes were for fraternity expenses; and (2) observations by the Defendant's wife to the Defendant's physical conduct, *i.e.*, receiving documents, writing checks, purchasing money orders and mailing checks. As demonstrated below, both types of evidence are inadmissible.

# ARGUMENT

**I.     Evidence that the bills, checks, money orders and envelopes were related to fraternity expenses are inadmissible hearsay evidence.**

The Statements the Defendant seeks to introduce into evidence through his wife's testimony are inadmissible hearsay statements. Rule 802 provides that "[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(a) defines a "statement" as (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion."

The bills, checks, money orders and envelopes (collectively, the "Documents") are relevant to the defense only to the extent that they related to the fraternity's legitimate expenses. The Defendant, therefore, seeks to introduce evidence through his wife's testimony that the Documents that she observed the Defendant process were related to the fraternity's expenses. To obtain her knowledge as to the nature of the Documents, *i.e.*, that they were related to the fraternity's expenses, she would have had to obtain that knowledge from either the Defendant or the Documents. Both potential sources constitute impermissible hearsay statements.

First, the Defendant's potential out of court, oral statements to her that the bills, checks, money orders and envelopes he was processing were related to fraternity expenses are classic hearsay.

Second, to the extent the Defendant's wife obtained her information about the nature of the expenses from the Documents sent to and processed by the Defendant, her statements about

what she saw on the Documents would be hearsay. To qualify as non-hearsay evidence, the Documents initially would have to be authenticated. *See* Rule 901(a). Because the Documents at issue – the bills, checks, money orders and envelopes – have not been produced by the Defendant, there is no way to authenticate that they existed.[1]

In addition, even if they could be authenticated, the Defendant's wife may not properly testify as to her recollection about what the Documents purportedly stated on their face. The use of the Documents in such a way would constitute a statement, namely that the Documents related to the fraternity's expenses, and that statement would indisputably be hearsay. *See United States v. Patrick*, 939 F.2d 991, 1000 (D.C. Cir. 1992) (use of receipt recovered in defendant's apartment to prove the defendant lived at home listed on the receipt "indisputably was hearsay"). Because the Documents constitute hearsay, the Defendant must seek to introduce the Documents under an appropriate exception to the hearsay rule. Here, however, no such exception exists.

To date, the Defendant has not produced copies of any bills, checks written on his personal bank account, money orders or envelopes that he purportedly processed using funds deposited into his personal checking account. The non-existence of the documents precludes them from being admitted as records of regularly conducted activity. *See* Rule 803(6). First, the Defendant apparently does not intend to call the vendors to show that "it was the regular

---

[1] The sole apparent exception are some of the unauthorized checks on the fraternity's general fund account made payable to specific fraternity vendors. *See* Defense Exhibit 1. Those checks have been authenticated by the banks that produced them, *see* Rule 901(b)(1), and admitted into evidence under an appropriate exception to the hearsay rule, *see* Rule 803(6) (records of regularly conducted activity). At most, the Defendant's wife could perhaps testify – to the extent she has a specific recollection as to each particular check (written over 5 years ago) – that she observed her husband write the checks to corroborate his conduct with regard to those specific checks she can recall seeing him write.

practice" of the vendor to prepare the bills.  *See Patrick*, 959 F.2d at 1001 (receipt for purchase inadmissible where government failed to call vendor to establish receipt prepared in the vendor's "regular practice").  But even if the Defendant could call a vendor to testify that it was its regular practice to record the information, the vendor must also satisfy the requirement that the information be "transmitted by, a person with knowledge."  Rule 803(6); *see Patrick*, 959 F.2d at 1001 (in determining admissibility of receipt, "it is sufficient if it is shown that [the vendor's] standard practice was to verify the information provided by the customer"); *United States v. Zapata*, 871 F.2d 616, 625 (7th Cir. 1989) ("the key to satisfying Rule 803(6) in this context is whether the employee was 'able in some way to verify the information provided – for example, by examining a credit card, driver's license, or other form of identification'") (quoting *United States v. Lieberman*, 637 F.2d 95, 100-01 (2d Cir. 1980)); *see also United States v. David*, 96 F.3d 1477 (D.C. Cir. 1996) (affirming conviction where pager bill properly admitted through custodian of records to tie defendant to address where drugs and gun found); *United States v. Mitchell*, 49 F.3d 769 (D.C. Cir. 1995) (upholding admission of recipients' names on Western Union money transfers as business records where recipients' names verified, but requiring other grounds where senders' names unverified); *United States v. Vigneau*, 187 F.3d 82 (1st Cir. 1999) (unverified senders' names on money transfers not admissible as business records).  This secondary requirement of validating the person transmitting the information in the case of a business record is particularly important where, as here, the Defendant has been charged with *fraud* for acts evidencing *forgery*.  There is, in short, no way of knowing without both the Documents themselves and testimony from someone with "knowledge" about the bills whether

the Defendant was also forging, *i.e.*, falsely creating, and showing his wife documents that were not, in fact, vendors' bills for legitimate fraternity expenses.

**II.    The marginally probative value of ambiguous physical acts of the Defendant observed by the Defendant's wife is substantially outweighed by the danger of unfair prejudice.**

In the absence of the authenticated bills, checks, money orders and envelopes, together with their admission into evidence under an appropriate exception to the hearsay rule, the most the Defendant's wife can testify to is that she saw the Defendant receive documents (without specifying their nature), write checks (without specifying their purpose), purchase money orders (without specifying their purpose) and mail envelopes (without specifying their purpose). Any marginally probative value of such routine and ambiguous physical conduct observed by the Defendant's spouse is substantially outweighed by the danger of unfair prejudice. The mere physical acts associated with paying bills has no necessary connection to the Defendant's duties as Treasurer. For example, Government Exhibit 27 demonstrated that the Defendant routinely received bills and wrote checks for purely *personal* expenses. *See United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) (Friendly, J.) ("The length of the chain of inferences necessary to connect the evidence with the ultimate fact to be proved necessarily lessens the probative value of the evidence, and may therefore render it more susceptible to exclusion as unduly confusing, prejudicial, or time-consuming ...."). As a result, the Defendant's spouse should not be permitted to testify about such ambiguous physical conduct.

## CONCLUSION

The government hereby respectfully submits the above memorandum on the issue regarding hearsay testimony of the Defendant's spouse.

                                                  Respectfully submitted,

                                                  JEFFREY A. TAYLOR
                                                  UNITED STATES ATTORNEY

By: _____/s/_____
           Michael K. Atkinson, D.C. Bar No. 430517
           Assistant United States Attorney
           555 4th Street, NW
           Room 5915
           Washington, D.C. 20530
           (202) 616-3702

DATED: April 27, 2007