## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br><br>) <br>**Plaintiff,** )<br>**v.** )<br>)<br>)<br>**TERRY DAVIS,** )<br>)<br>**Defendant.** )<br>_____) | **Criminal No. 06-193 (RBW)** |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Terry Davis, through undersigned counsel, hereby submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32. This memorandum is intended to correct inaccuracies in the presentence investigation report which may affect the Court's calculation of a fair and just sentence in this case. Based on all the sentencing factors, Mr. Davis respectfully requests the Court to consider alternative sentencing options that would allow Mr. Davis to be confined in the community.

Mr. Davis disagrees with the PSR's ultimate sentencing calculation. The Probation Office has determined Mr. Davis' base offense level to be six and added twelve levels for a loss amount of more than $200,000 but less than $400,000. With regard to the federal offenses, Mr. Davis was convicted of embezzling eight checks for a total of $18,500. (While Mr. Davis recognizes that the D.C. Circuit has held that a sentencing judge may rely on facts found merely by a preponderance even where a jury has previously acquitted a defendant of the same conduct, see United States v. Dorcely, 454 F.3d 366, 372-73 (D.C. Cir. 2006), the law does not mandate a

1

court to include acquitted or uncharged conduct in determining a sentence).[1]  This loss amount

would result in an addition of four offense levels to the base offense level instead of twelve as

determined by the Probation Office.  Mr. Davis also submits that the probation office should not

have added two points to his offense level for obstruction of justice.[2]  Mr. Davis does not dispute

---

[1]      The evidence in Mr. Davis' case indicated that he paid fraternity expenses using funds from his personal account.  The government proved beyond a reasonable doubt that Mr. Davis misappropriated the $18,500 identified in counts one, and three through nine, but not that he misappropriated more.  Mr. Davis' offense level should be based on the loss amount proven and not any speculative amount beyond that.

In counts eleven and twelve, the government was only required to prove a loss amount of greater than $250.  To the extent that the government proved higher loss amounts to reach a total loss amount of greater than $200,000, the government's proof was relevant only under counts eleven and twelve and not under the counts one through ten (because separate evidence of theft as it relates to counts one through ten would have been impermissible propensity evidence).  As such, any sentencing determination based upon a loss amount greater than $200,000 should correspond to counts eleven and twelve.  Counts eleven and twelve  recommend a sentence of six to twenty-four months.

[2]      Mr. Davis disagrees with the Probation Office's adoption of the government's characterization of the underlying offense and the testimony presented by Mr. Davis in this case. The Probation Office added two levels to Mr. Davis' offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1 despite the fact that this enhancement requires a finding by this Court by clear and convincing evidence.  See United States v. Montague, 40 F.3d 1251, 1254 (D.C. Cir. 1994).

In order to make an adjustment under § 3C1.1 on the basis of the defendant's alleged perjury, a court must "review the evidence and make independent findings necessary to establish willful impediment to or obstuction of justice or an attempt to do the same, under the perjury definition." United States v. Dunnigan, 507 U.S. 87, 95 (1993).  An enhancement under § 3C1.1 requires a court to find that the defendant provided "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." Id. at 94.  Furthermore, "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." Id. at 95.  Moreover, the Guidelines themselves provide that § 3C1.1 "is not intended to punish a defendant for the exercise of a constitutional right." U.S.S.G. § 3C1.1, n.2.

The jury in the immediate case obviously credited Mr. Davis' testimony because it acquitted him of counts two and ten.  Accordingly, the position that a guilty verdict on the remaining counts is sufficient for an enhancement under § 3C1.1 is contrary to the Sixth Amendment and the objectives of the Sentencing Guidelines themselves.  Had Mr. Davis not testified, the jury would not have had a basis to acquit him of any conduct.  This Court should

2

the two points added for his role in the offense.  A correct application of the guidelines results in

a total adjusted offense level of twelve and not twenty-two as calculated by the probation office.

An offense level of twelve yields a sentencing guideline range of ten to sixteen months.

Regardless of the ultimate sentencing guideline range determined by this Court, however, the

Guidelines are just one of several factors to examine in deciding the proper sentence.

## DISCUSSION OF 18 U.S.C. § 3553

"[S]urely, if ever a man is to receive credit for the good he has done, and his immediate

misconduct assessed in the context of his overall life hitherto, it should be at the moment of his

sentencing, when his very future hangs in the balance."[3]  Mr. Davis respectfully submits this

memorandum requesting that the Court consider his entire life and all that he has done in

contemplating a sentence "sufficient <u>but not greater than necessary</u>" to satisfy all of the statutory

purposes of sentencing. 18 U.S.C. §3553 (emphasis added).

As the Court is well aware, the Guidelines are now one advisory factor among many

others to be weighed by the sentencing court.   <u>United States v. Booker</u>, 543 U.S. 220 (2005);

<u>United States v. Price</u>, 409 F.3d 436, 443 (D.C. Cir. 2005) (noting that <u>Booker</u> excised

mandatory Guidelines provision of 18 U.S.C. § 3553(b) but that § 3553(a)'s specification of

factors that guide federal sentencing, including application of Guidelines, remains in effect).  As

_____

not punish Mr. Davis for exercising his right to testify by including within Mr. Davis' guideline
calculation an enhancement for obstruction of justice.

[3]      <u>United States v. Adelson</u>, 441 F. Supp.2d 506, 513 (S.D.N.Y. 2006); <u>see</u> <u>also</u> <u>id.</u>
at 514 ("This elementary principle of weighing the good with the bad, which is basic to all the
great religions, moral philosophies, and systems of justice, was plainly part of what Congress had
in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and
characteristics of the defendant'").

Price stated, "[t]hese factors include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with needed educational or vocational training, any pertinent policy statements issued by the Sentencing Commission, the need to avoid unwarranted disparities among similarly situated defendants, and the need to provide restitution to any victims." 409 F.3d at 442 (citing § 3553(a)).

The most important consideration for this Court in sentencing Mr. Davis must be  the directive of Congress to "impose a sentence sufficient but <u>not greater than necessary</u>, to comply with [the purposes of sentencing]".  18 U.S.C. § 3553(a) (emphasis added).  While the standard on appeal is whether the sentence is reasonable, that is <u>not</u> the standard for the district court.  <u>See</u> <u>United States v. Collington</u>, 461 F.3d 805, 807 (6th Cir. 2006) ("a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2).  Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task.").

Mr. Davis acknowledges that a sentence that falls within the properly calculated advisory Guidelines range *may* be presumed reasonable *by an appellate court*.  <u>United States v. Rita</u>, 127 S. Ct. 2456 (2007);  <u>United States v. Dorcely</u>, 454 F.3d 366, 376 (D.C. Cir. 2006).  This Circuit has added, however, that "[a] sentencing judge *cannot presume* that a Guidelines sentence is the correct sentence." <u>United States v. Pickett</u>, 475 F.3d 1347, 1353 (D.C. Cir. 2007) (emphasis added).  Rather, the correct approach "is to evaluate how well the applicable Guideline effectuates the purposes of sentencing enumerated in § 3553(a)." <u>Id</u>.  Given the § 3553 factors in Mr. Davis' case, a sentence involving community confinement would be appropriate here.

4

Mr. Davis recognizes that the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and effectively provides the defendant with needed educational or vocational training and medical care.  See 18 U.S.C. § 3553(a)(2).  Section 3553(a) also directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Taken together, the directives of Booker, as well as Sections 3553, 3661, and 3582 of Title 18, make it clear that this Court may consider all relevant sentencing factors, including prohibited Guidelines departure factors, in fashioning an individualized sentence in this case.  See United States v. Gomez, 431 F.3d 818, 825 (D.C. Cir. 2005) ("[i]f Booker's rendering the Guidelines discretionary means anything, it must give a district judge greater latitude on these [prohibited departure] issues than did Koon [v. United States, 518 U.S. 81 (1996)]."  Mr. Davis urges this Court to observe these factors and to fashion a sentence that is no more severe than necessary to satisfy the statutory rationales guiding courts in any sentencing.

## **RELEVANT CONSIDERATIONS FOR SENTENCING**

Terry Davis is 41 years old.  He was born and reared in Memphis, Tennessee and grew up with five siblings in a single family home headed by his mother.  He had occasional contact with his father.   Mr. Davis graduated from high school as an honor student and was subsequently admitted to Memphis State University where he first became involved with Phi Beta Sigma.  He has been deeply involved in the functions of the fraternity since first becoming a member.  He

5

has held several leadership positions and volunteered his time and service in promoting the fraternity's motto, "Culture for Service and Service for Humanity." As the Court heard during the course of the trial, Mr. Davis was treasurer of Phi Beta Sigma when he committed the offenses of which he stands convicted. At the time, he enjoyed the reputation as a man of high moral character. As the attached letters reflect, Mr. Davis' good deeds and good reputation extended beyond his fraternity to everyone who had contact with him.

Mr. Davis' experiences and character demonstrate that he is a man who is committed to serving and respecting society and its laws, not undermining them. He is described by family, friends, and colleagues as a hardworking, thoughtful, and caring man. As the many letters reflect, this crime represents a marked deviation from an otherwise law abiding life. See Letters of Friends and Family attached collectively as Exhibit A.

Although Mr. Davis does not move for a departure under the sentencing guidelines, he asks the Court to recognize that under § 5K2.20, a sentence below the applicable guideline range is permitted where the defendant's criminal conduct constituted "aberrant behavior." Section 5K2.20 lists five factors that preclude such a departure, and Mr. Davis does not fall into any of the prohibited categories: (1) there was no serious bodily injury; (2) no firearm was used; (3) his instant offense is not a serious drug trafficking offense; (4) he does not have any criminal history points; and (5) he has no prior felony convictions.

Application Note 1 to U.S.S.G. § 5K2.20 defines "aberrant behavior" as "a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." Mr. Davis acknowledges that his conduct does not strictly

6

satisfy this definition.  He nevertheless requests this court to recognize that, but for the duration

over which the crime took place, it was an aberration in the life of Mr. Davis.

Mr. Davis was convicted of stealing money from Phi Beta Sigma by depositing it into his

personal bank account.  The nature and circumstances of his crime were not particularly

sophisticated.  It obviously involved an abuse of a position of trust (which is a factor already

incorporated into Mr. Davis' sentencing guideline range) but did not involve intricate planning or

specialized skill to achieve.  A paper trail clearly identified funds improperly deposited by Mr.

Davis into his personal banking account and Mr. Davis did nothing to obfuscate that paper trail.

He used  funds deposited in his personal banking account to pay personal expenses that were

likewise easily identified through documents detailing account transactions.  Moreover, as the

jury's verdict on Counts Two and Ten reflect, it apparently found that Mr. Davis used some

funds from his personal banking account to cover fraternity expenses.  To the extent that the jury

found that Mr. Davis used other fraternity funds to pay personal expenses, Mr. Davis deeply

regrets his actions.  He certainly regrets the deterioration of his relationship with his fraternity, an

organization to which he had been deeply committed, and the harm his actions caused the

fraternity.

Prior to his conviction in the instant matter, Mr. Davis had no criminal convictions and

was a positive role model for friends, fraternity members, and young people in his community.

His conviction will cost him a great deal in terms of these relationships.  A life in which Mr.

Davis seemed to make so many good decisions is now forever tarnished as a result of his actions

in this case.  His conviction is out of character for him and depresses him greatly.  Even if this

court were to decline to show leniency to Mr. Davis given the aberrational nature of his conduct,

Mr. Davis urges the court to consider the collateral consequences his conviction will have on him.

Although he had a proven history of appearing for court as directed and, aside from the instant offense, had no history even hinting at a dangerousness to society, Mr. Davis was abruptly remanded to custody following the guilty verdict in this matter. He has awaited sentencing from the D.C. Jail unable to prepare for any sentence this Court could impose or to attend to personal and financial affairs requiring his attention. As a result, Mr. Davis was terminated from his employment at Crichton Christian College, went into default on several debts, and was unable to prepare his friends and family for his potential absence. As the attached letters indicate, there are many people who relied upon Mr. Davis for moral, emotional, and financial support.

Following this conviction, it is unlikely that Mr. Davis will ever be able to return to his chosen profession as an accountant given the violation of a fiduciary duty and abuse of trust associated with his crime. Mr. Davis has been expelled from the fraternity, and his relationships with his fraternity brothers are forever damaged. Thus, a life and reputation that have taken over forty years to establish is forever decimated.

In United States v. Wachowiak, 412 F. Supp.2d 958, 963-64 (E.D. Wis. 2006) the district court imposed a sentence below the recommended guideline range because "the guidelines failed to account for the significant collateral consequences defendant suffered as a result of his conviction. His future career as a teacher was ruined, and he was compelled to resign as piano teacher of children . . . [and will be] forced to live with the stigma of being a convicted sex offender." See also United States v. Samaras, 390 F.Supp.2d 805, 809 (E.D. Wis. 2005) (lower sentence appropriate because defendant lost good public sector job as consequence of conviction

– factor not considered by guidelines); United States v. Stone, 374 F. Supp.2d 983 (D.N.M. 2005) (sentence 18 months under guidelines appropriate in case where defendant lost employment and wife as result of conviction; "court concludes that a sixty month term of incarceration, coupled with Stone's personal losses, reflects the seriousness of his offense, promotes respect for the law, and provides just punishment"); United States v. Redemann, 295 F. Supp.2d 887 (E.D.Wis. 2003) (departing downward when defendant suffered collateral consequences from conduct including loss of his business); United States v. Adelson, 441 F.Supp.2d 506, 514 (S.D.N.Y. 2006) (in securities fraud where guidelines called for life sentence, court imposed 42 months noting that factor of specific deterrence accounted for because "with his reputation ruined by his conviction, it is extremely unlikely that he would ever involve himself in future misconduct"). Similarly because of the collateral consequences here, including the impact on Mr. Davis' profession career and reputation as well as his social network, this Court should find that the need to punish Mr. Davis and deter others has already been partially achieved. See United States v. Gaind, 829 F. Supp. 669, 670 (S.D.N.Y. 1993) (departure granted in part because the destruction of the defendant's business already achieved to a significant extent some of the objectives otherwise required to be sought through the sentencing process).

A sentence that restricts Mr. Davis to home confinement or to a halfway house would be more than adequate to meet the sentencing purposes set forth in §3553(a)(2). The crime of which Mr. Davis stands convicted is not a crime of violence. While the fraternity suffered a loss as a result of Mr. Davis' actions, the loss slowed fraternity functions but did not completely debilitate it. None of this is to suggest that Mr. Davis should not be held accountable. Indeed, as

explained above he has already suffered a toll as a result of his tarnished name, the loss of his

job, his ejection from fraternity he loved, and a permanent felony record.  He has also suffered as

a result of his incarceration at the D.C. Jail over the past three months.  See United States v.

Francis, 129 F. Supp.2d 612, 619 (S.D.N.Y. 2001) (downward departure granted due to 13 month

pretrial confinement in overcrowded local facility because "qualitatively different conditions than

those of pre-sentence detainees in federal facilities operated by the Bureau of Prisons").  And he

has suffered by being remanded to custody immediately after the jury verdict (at the order of a

different Judge) so that he was unable to put his affairs in order before incarceration.

As the Court is aware, unlike most defendants facing sentencing for economic crimes,

Mr. Davis was denied the opportunity to remain in the community pending sentencing.  Most

people charged with economic crimes are allowed to remain at liberty through trial and

sentencing, and are allowed to self surrender to the Federal Prison once they are designated, thus

avoiding even one day in the D.C. Jail.[4]  While no one would voluntarily spend time incarcerated

---

[4]        As the Court is aware, defendants covnicted of tax and business crimes are
frequently allowed to remain free even after conviction and to self surrender, thereby making it
much more likely they would serve their sentences in Federal Prison Camps.  Former Homestore
CEO Stuart Wolff who was convicted in a multimillion-dollar accounting fraud was allowed to
remain free pending his appeal, despite being convicted and facing a 15 year prison term.
Similarly, 68 year old John Lynch of New Brunswick was sentenced to 39 months in Federal
custody after pleading guilty to mail fraud and income tax evasion.  He was released by Judge
Stanley Chesler and allowed to self surrender.  Richard Stears, who served as the chair of the Log
Cabin Republicans pleaded guilty to tax evasion and is on release status pending his sentencing
later in March.  Doug Dowie and John Stodder from the Fleishman-Hilliard firm were sentenced
after being convicted at trial of wire fraud and conspiracy charges stemming from Los Angelos
City Hall corruption scandal.  They were both released on bond during the entire proceeding
despite facing potential lifetime sentences, and were allowed to self-surrender to a Federal Prison
Camp after sentencing.  Sam Waksal was released on bond after being charged with several
counts of fraud and perjury.  He ultimately pleaded guilty to eight counts and on June 30, 2003,
was sentenced to 87 months, but was allowed to self surrender to a federal prison camp.

in a federal prison setting, the conditions in federal prison are dramatically more tolerable than

the D.C. Jail.  There is a  reason courts have allowed departures for defendants facing onerous

conditions of confinement:

> For a defendant who faces more onerous conditions of confinement
> than the typical defendant, the court can impose a shorter prison
> sentence and obtain the same punitive effect.  A departure is
> warranted because at least one of the purposes of sentencing – just punishment– is satisfied by a s

United States v. Redemann, 295 F. Supp. 2d 887, 896 (E.D. Wis. 2003).  Because of his pre-

sentencing detention, Mr. Davis has been punished more harshly than others convicted of similar

crimes with no criminal records and additional incarceration in a federal facility would be

unnecessary.

Mr. Davis recognizes that he must accept the consequences of his conviction.  He seeks

only to be punished in a community corrections setting and that he be afforded  the opportunity to

continue to work, not simply to continue to support his family, but also so that he may begin to

pay restitution.  Title 18 U.S.C. § 3553(a)(7) outlines "the need to provide restitution to any

victims of the offense" in determining a particular defendant's sentence.  Many courts have

recognized the reasonableness of sentencing defendants to sentences below the Guidelines to

enable them to make restitution.  See e.g., United States v. Menyweather, 431 F.3d 692, 702 (9th

Cir. 2005); United States v. Bortnick, 2006 WL 680544 (E.D. Pa. March 15, 2006); United

States v. Coleman, 370 F. Supp.2d 661 (S.D.Ohio 2005); United States v. Peterson, 363 F.

Supp.2d 1060 (E.D. Wis. 2005; United States v. Blackburn, 105 F.Supp.2d 1067 (S.D. South

Dakota 2000) (departing from Zone B to Zone A so that the defendant could be placed on

probation and pay restitution to the victims).

Moreover, respect for the law is not promoted simply by severe sentences, but by justice tempered with mercy.  Many of Mr. Davis' friends have touched eloquently on this concept. They have suggested that if freed from prison, they expect Mr. Davis will be able to contribute in important ways to his community and society at large.  It is well established that sentences less severe than recommended by the Guidelines can have a significant specific and general deterrent value where the defendant has no prior involvement with the criminal justice system.  See United States v. Adelson, 441 F. Supp. 506, 514 (S.D.N.Y. 2006) (although Guidelines recommendation given loss amount called for a life sentence, court sentenced defendant to 42 months in part because "there is considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders").  The Adelson Court cited number of studies establishing strong deterrent effect correlating to "short" prison sentences for economic-crime defendants, including Richard Frase, Punishment Purposes, 58 Stanford L. Rev. 67, 80 (2005) and Elizabeth Szockyj, Imprisoning White Collar Criminals?  23 S. Ill U. L. J. 485, 492 1998).  The Court also noted that

> the government at no time here presented any evidence or cited to any studies indicating that a sentence of more than three-and-a-half years was necessary to achieve the retributive and general deterrence objectives applicable to a case like this one.  And 'necessary' is the operative word, for section 3553(a) expressly dictates that '[t]he court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection.'

Adelson, 441 F. Supp. At 514-515.

In United States v. Baker, 445 F.3d 987, 992 (7th Cir. 2006), the Court noted that a sentence below that recommended by the guidelines was appropriate because prison time is more

12

significant for a first offender, thus affecting the statutory factors of just punishment and

adequate deterrence.  See also United States v. Cull, 446 F. Supp.2d 961, 965 (E.D.Wis. 2006)

(sentence below guidelines was appropriate when defendant had never been imprisoned before

because the imposed sentence "was sufficient to impress upon him the seriousness of the offense

and to deter others under similar circumstances"); United States v. Qualls, 373 F. Supp.2d 873,

877 (E.D.Wis. 2005) ("generally a lesser period of imprisonment is required to deter a defendant

not previously subject to lengthy incarceration than is necessary to deter a defendant who has

already served serious time yet continues to re-offend").

It is within the bounds of this Court's discretion to fashion a sentence that will serve the

needs of the public for Mr. Davis' punishment, but will also acknowledge that this is Mr. Davis'

first and only conviction in his life, that he is capable of living productively, and that the non-

judicial consequences of his actions have cost him more than any term of imprisonment ever

could.  Allowing for Phi Beta Sigma to begin to be repaid and allowing for the public to benefit

through community service by Mr. Davis in lieu of incarceration would be an appropriate

exercise of the Court's sentencing discretion.

## CONCLUSION

For all of the foregoing reasons and for such other reasons as may be discussed at the

sentencing hearing in this matter, Mr. Davis respectfully requests that the Court consider as a

governing rationale, "the general appropriateness of imposing a sentence other than

imprisonment in cases in which the defendant has not been convicted of a crime of violence or

otherwise serious offense."  Comment Note to 18 U.S.C. § 3551 (reciting legislative history of federal sentencing scheme).

Mr. Davis recognizes that the Court cannot ignore the conduct for which he stands convicted.  At the same time, Mr. Davis urges the Court to recognize the merit in his entire life and the contributions he has made to society.  Mr. Davis has been convicted for behavior that is anamolous from an otherwise faultless record of community service and selfless acts.  Having been convicted of acts of which he is ashamed, Mr. Davis seeks recognition that he is capable and prepared to live the rest of his years free of involvement with the criminal justice system. An alternative sentence of probation with a condition that he serve the first  twelve months on electronic monitoring or in a community corrections center would acknowledge that hope remains for Mr. Davis, while at the same time serving society's interest in punishing him. Should the Court impose a sentence of incarceration, Mr. Davis requests that the court impose concurrent sentences for his offenses as recommended by both the federal Guidelines and the D.C. Guidelines.[5]

<div style="margin-left: 40%;">

Respectfully submitted,
A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/S/_____
Tony Axam, Jr.
Assistant Federal Public Defender
625 Indiana Ave., N.W., Ste. 550
Washington, D.C. 20004

</div>

---

[5]    See U.S.S.G. § 5G1.2(c) ("If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law"); D.C. Sentencing Guidelines § 6.2 ("The following sentences must be imposed concurrently: For non-violent crimes: multiple offenses in a single event, such as passing several bad checks") (emphasis in original).

15