**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 06-193  (RBW) |
| | ) | |
| TERRY DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

OCT 1 2009

NANCY MAYER ... U. CLERK
U.S. DISTRICT COURT

**Memorandum Opinion**

On May 3, 2007, the defendant was convicted of ten United States and District of Columbia criminal offenses: eight counts of bank fraud, one count of theft in the first degree, and one count of fraud in the first degree.  On August 7, 2007, as a consequence of these convictions, the defendant was sentenced to a prison term of fifty-one months and five years of supervised release for his United States Code offense convictions and a prison term of  twenty-four months and three years of supervised release for his District of Columbia Code offense convictions.  Both the prison terms and the supervised release terms were designated to run concurrently.  Subsequently, on August 21, 2007, the defendant filed an appeal of his convictions and sentences with the District of Colombia Circuit.  Then, on April 29, 2009, the defendant filed the motion which is the subject of this Order, requesting that he be released on bond pending the resolution of his appeal pursuant to 18 U.S.C. §§ 3141(b) and 3143(b), asserting "that the Court erroneously admitted evidence in violation of Federal Rule of Evidence 408 that he offered to settle amounts that Phi Beta Sigma (PBS) claimed he had embezzled."  Defendant Terry Davis's Motion for Release Pending Appeal ("Def.'s Mot.") at 1.  The government opposes the defendant's request.  Government's Opposition to Defendant's Motion

for Release Pending Appeal ("Gov. Opp'n") at 1.  For the following reasons, the defendant's

motion for release pending the resolution of his appeal is denied.

## I. Factual Background

As indicated, the defendant argues in his appeal that this Court improperly admitted into

evidence a conversation between him and Jimmy Hammock, the defendant's successor as

treasurer of the fraternity from which he was convicted of misappropriating funds, during which

Mr. Hammock testified he asked the defendant about cancelled checks of the fraternity totaling

$29,000 and made payable to cash.  Def.'s Mot. at 3.  Mr. Hammock testified that the defendant

told him the checks were used to transfer funds to the fraternity's payroll account.  Id.  Mr.

Hammock then testified that he told the defendant, "'Terry, that cash did not make its way to our

payroll account.'"  Id. at 3-4. The defendant responded asking, "'[c]an we just split this

$29,000.00 and make this situation go away?'"  Id. at 4.  Mr. Hammock then told the defendant

that he had discovered more than $100,000.00 in checks made payable to cash, to which the

defendant responded, "'I can't afford to pay that amount.'"  Id.  Mr. Hammock replied, "'Terry,

if you want to do some—negotiate some kind of settlement, you need to talk to our legal counsel

or our international president.'"  Id.  Over the defendant's objection, the Court ruled this

testimony admissible to show consciousness of guilt and to show an ongoing effort on the part of

the defendant to conceal his illegal behavior.  Id.

## II. Legal Standard of Review

The United States Code requires that a federal criminal defendant "who has been found

guilty of an offense and sentenced to a term of imprisonment" be detained during the pendency

of his appeal, unless the Court finds (1) that the person does not pose a flight risk or a danger to

the community; and (2) "that the appeal is not for the purpose of delay and raises a substantial

question of law or fact likely to result in . . . reversal[] [or] an order for a new trial." 18 U.S.C. §

3143(b)(1) (2006).

In United States v. Perholtz, 836 F.2d 554 (D.C. Cir 1999), the District of Columbia

Circuit held that an issue is "substantial" for the purposes of § 3143(b) if it "is a 'close' question

or one that very well could be decided the other way." Id. at 555 (internal quotation marks and

footnote omitted); see, e.g., United States v. Day, 433 F. Supp. 2d 54, 55 (D.D.C. 2006)

(applying the Perholtz standard); United States v. Quinn, 416 F. Supp. 2d 133 (D.D.C. 2006)

(same).[1] In so holding, the Perholtz Court considered "[t]wo differing standards for determining

substantiality [that had] been adopted in the various circuits," choosing to adopt the "more

demanding" of the two standards "because it appears better [in] accord with the expressed

congressional intent to increase the required showing on the part of the defendant."[2] Perholtz,

836 F.2d at 555-56. Further, the court noted that "[t]he law has shifted from a presumption of

release to a presumption of a valid conviction." Id. at 556. And the defendant bears the burden

of rebutting this presumption in order to demonstrate that he is entitled to release pending

appeal. United States v. Libby, 498 F. Supp. 2d 1, 3 (D.D.C. 2007); see United States v. Colon

---

[1] In Quinn, a member of this Court concluded that the § 3143(b)'s substantiality test is satisfied "where a defendant challenges the Court's ruling on a novel question of law and provides a rationale for a contrary interpretation that is supported by arguably applicable legal authority . . . ." Quinn, 416 F. Supp. 2d at 136; see also id. (stating that "the Court cannot say that the question for appeal is insubstantial or not susceptible to a different answer."). The Quinn Court provides no legal support for its interpretation of the Perholtz standard, which appears to this Court to be somewhat less "demanding" than contemplated by Perholtz. Perholtz, 836 F.2d at 555. The plain language of Perholtz seemingly rejects the proposition that a question is "substantial" for the purposes of § 3143(b) merely because the issue raised is novel and there is a contrary interpretation of the law that is "arguably applicable." Quinn, 416 F. Supp. 2d at 136 (emphasis added); see Perholtz, 836 F.2d at 555 (holding that an issue is substantial if it "is a 'close' question or one that very well could be decided the other way.") (emphases added) (internal quotation marks and footnote omitted). Indeed, it is not difficult for this Court to envision "novel" questions of law, which after a careful examination, nevertheless leads to only one clear answer, even if the questions might possibly be "susceptible" to differing "arguably applicable" interpretations. Quinn, 416 F. Supp. 2d at 136. Such questions would not, in this Court's view, be considered "substantial" under Perholtz.

[2] The less demanding of the two standards considered by the Perholtz Court provides that "a substantial question is one that is 'fairly debatable,' 'fairly doubtful,' or 'one of more substance than would be necessary to a finding that it was not frivolous.'" Perholtz, 836 F.2d at 555 (footnote omitted). Only the Third and Ninth Circuits have adopted this standard. See id. at 555 n.2 (citing cases).

Berrios, 791 F.2d 211, 214 n.4 (1st Cir. 1986) (stating that "[i]n enacting § 3143[(b)], Congress

placed the burden as to all elements bearing on whether to grant bail pending appeal on [the]

defendant[].") (emphasis in original) (citations omitted).  Accordingly, if the Court cannot

conclude that the defendant raises "a 'close' question or one that could very well be decided the

other way," Perholtz, 836 F.2d at 555 (internal quotation marks and footnote omitted), it is

obligated  to order the defendant's detention.  18 U.S.C. § 3143(b)(2).  On the other hand, if the

Court finds that the defendant does raise a substantial question of law or fact, it must release the

defendant while he pursues his appeal.  18 U.S.C. § 3143(b)(1); see Def.'s Mot. at 2 (observing

that "bail pending appeal is mandatory, not discretionary," once the requirements of § 3143 are

found to have been met).  The government argues that the defendant is unable to satisfy either

prong of 18 U.S.C. § 3143(b)(1).  The Court agrees.

### III. Legal Analysis

A.      Has the Defendant Demonstrated That He Does Not Pose a Flight Risk?

The defendant claims that he has satisfied the first prong for release by referring the

Court to his actions and behavior while the case was pending before this court.  Def.'s Mot. at 2.

Specifically, the defendant states:

> Throughout the trial and preceding the announcement of the verdict in this case,
> Mr. Davis was on pretrial release for nearly one year.  In that time, his presence
> was required in this Court more than half a dozen times.  Mr. Davis never failed
> to appear and never appeared late.  On the contrary, he was always punctual and
> obedient to the orders of this Court.  Additionally, Mr. Davis was always in
> complete compliance with the conditions set by this Court and monitored by the
> Pre-trial Services Agency (PSA) while on release. Mr. Davis maintained a stable
> residence in Memphis, Tennessee, where his wife continues to reside.  He never
> failed to abide by his weekly requirement to check-in with PSA.  Also, Mr. Davis
> continues to have strong ties to his community.  He has lived the majority of his
> life in Memphis, Tennessee where he is now incarcerated.

Id. at 2-3.  In addition, the defendant asserts that he has a good reputation in his community and extended family in the community.  Id. at 3.  All these factors, the defendant contends, support his request for release pending the resolution of his appeal.

The government argues in response that despite the defendant's behavior preceding the announcement of the verdict and his connections to the community, he nonetheless poses a significant risk of flight.  The government references incidents that occurred during the trial that it contents led to his "immediate confinement following the jury's verdicts,"  Gov. Opp'n at 3-4, alleging that the defendant's behavior displayed desperation worthy of "immediate and continued detention."  Id. at 4.  Specifically, the government asserts that the defendant consistently lied concerning the purported authorization he had been accorded by the fraternity concerning its bank accounts.  Id.  Furthermore, the government contents that the defendant subjected his wife to potentially dire legal ramifications by allowing her to testify on his behalf. Id.  The government contends that the defendant's behavior was sufficiently desperate that "the Court later stated, the defendant's willingness to expose his wife to such potentially grave legal peril demonstrated a level of desperation sufficient to merit his detention following the jury's guilty verdicts."  Id.  Finally, the government asserts that the defendant has not demonstrated that he currently is anymore less a flight risk than he was a the time of the verdict, and that his failure to take responsibility for his actions, which is apparent from his denial of the theft and fraud charges, is persuasive in categorizing him as a flight risk.  Id. at 5.  Therefore, given that two years of the defendant's sentence still remain, the government asserts that he has "sufficient motivation to engage in additional desperate measures," given that he is unlikely to succeed on appeal.  Id.

Despite the defendant's contentions to the contrary, the Court agrees with the government. The defendant's disregard for his wife's welfare in the face of overwhelming evidence of his guilt illustrated  his desperation to avoid being convicted and potentially incarceration.  And given the amount of time remaining on the defendant's sentence, the Court is not convinced that the defendant will not flee to avoid serving the remainder of his sentence. Therefore, because the defendant is unable to demonstrate through "clear and convincing evidence" that he is unlikely to flee while his appeal is pending resolution, the defendant has failed to carry his burden on the initial prong of 18 U.S.C. § 3143(b).

Although this  ruling is dispositive of the defendant's motion, the Court will also address the second prong of the test for release pending appeal: whether the defendant's appeal raises a substantial question of law.

B.      Has the Defendant Demonstrated That His Appeal Raises a Substantial Question of Law?

The defendant argues that his appeal raises a substantial question of law because his conversation with Mr. Hammock amounted to a settlement negotiation and should have been excluded by the Court under Federal Rule of Evidence 408.  Def.'s Mot. at 3-4.  Specifically, the defendant argues that his offer to "split" the $29,000.00 was a settlement offer.  Def.'s Mot. at 4-5.  The defendant argues that his statements to Mr. Hammock fall within the scope of Rule 408 because he was offering to furnish valuable consideration in compromising or attempting to compromise a claim, and that his liability for the amount owed was in dispute.  Id. at 4-5.  The defendant argues that if the issue is decided in his favor, his conviction will be reversed because his statements amounted to a confession that he committed the crime charged and "his ability to establish that he had no criminal liability was irreparably shattered."  Id. at 5.

The government contends that the defendant's appeal does not raise a substantial question of law. Gov. Opp'n at 5. According to the government, Rule 408 does not apply to Mr. Hammock's testimony because Mr. Davis did not offer valuable consideration in compromising or attempting to compromise a claim. Id. at 6. The government maintains that offering to repay the fraternity's money did not constitute valuable consideration because the defendant had a legal obligation to repay the money he misappropriated. Id. Furthermore, the government contents that agreeing to perform a preexisting legal duty that is not in dispute does not constitute valuable consideration. Id. at 7. The government further argues that Rule 408 does not apply to Mr. Hammock's testimony because the discussion between Mr. Hammock and the defendant cannot be characterized as a settlement negotiation. Id. at 8. According to the government, the purpose of the discussion was for Mr. Hammock to confront the defendant regarding his statements that he had transferred funds into the fraternity's account. Id. Mr. Hammock told the defendant during this discussion that any intent to engage in compromise negotiation should be directed at the fraternity's legal counsel or international president. Id. Thus, the government argues that these statements demonstrate a lack of intent by Mr. Hammock to engage in negotiations with the defendant, and that both parties must assent to settlement discussions for Rule 408 to require exclusion of the defendant's statements. Id. Finally, the government argues that Mr. Hammock's testimony was admissible under Rule 408 because it was offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim. Id. Rather, the government posits that the testimony was admissible because it was relevant and probative of the defendant's consciousness of guilt, and that the testimony was also probative of his continuing efforts to mislead the fraternity of the nature and scope of his fraudulent conduct. Id.

Rule 408 excludes evidence of offers to furnish valuable consideration in an attempt to compromise a claim and statements made during compromise negotiations offered to prove the liability, invalidity, or the amount of a disputed claim. Fed. R. Evid. 408. Evidence of offers to compromise, however, may be admitted when offered for purposes other than proving liability for, invalidity of, or amount of a disputed claim. Id. For Rule 408 to require exclusion, there must be an actual dispute between the parties as to the validity of the claim. See Dallis v. Atena Life Ins. Co., 768 F.2d 1303, 1307 (11th Cir. 1985) (citing 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 408[01] (1982)); Deere & Co. v. Int'l Harvester Co., 710 F.2d 1551, 1556-57 (Fed. Cir. 1983) (holding that Rule 408 applies only to actual disputes). The rule applies to both subsequent civil and criminal litigation.[3] Fed. R. Evid. 408 advisory committee's note, 2006 amendment.

First, the Court concludes that the defendant has not shown the existence of a dispute regarding the validity of the fraternity's eventual claim that he owed it the $29,000 that was first mentioned by Mr. Hammock. When confronted by Mr. Hammock about the $29,000 in checks written to cash from the fraternity's account, the defendant first lied, stating that the money had been deposited into the fraternity's payroll account. Gov. Opp'n at 7. When confronted with the falsity of his representations, the defendant then offered to pay some of what was owed in order to "'make [the] situation go away,'" and when immediately thereafter confronted with additional sums missing from the fraternity's accounts, he responded that he could not afford to pay the greater amount. Def.'s Mot. at 4. At no point during the conversation did the defendant

---

[3] The government does not challenge whether Rule 408 applies to subsequent criminal litigation. However, the District of Columbia Circuit has questioned whether Rule 408 applies to offers of compromise offered as evidence in subsequent criminal litigation. See United States v. Graham, 91 F.3d 213, 218-19 (D.C. Cir. 1996) (questioning whether the policy of promoting compromise behind Rule 408 extends to protect statements made by criminal defendants). But the advisory committee's note following the 2006 amendments to the Federal Rules clearing indicate that Rule 408 is intended to apply to criminal as well as civil litigation. Fed. R. Evid. 408 advisory committee's note, 2006 amendment.

dispute the amount or validity of the sums represented by Mr. Hammock. Further, at the point when Mr. Hammock confronted the defendant, the fraternity was not asserting a claim against the defendant; Mr. Hammock was merely investigating the status of funds he suspected were missing from the fraternity's accounts. Given that the defendant has not shown that there was a dispute regarding the validity or amount of a claim that was being made against him when he was speaking to Mr. Hammock, his statements to Mr. Hammock were properly admitted into evidence. Dallis, 768 F.2d at 1307.

Second, even assuming for the sake of argument that there was a dispute over the validity or amount of funds Mr. Hammock was alleging the defendant owed the fraternity when Mr. Hammock confronted him, the Court finds that Lee Middleton Original Dolls, Inc. v. Seymour Mann, Inc., 299 F. Supp. 2d 892 (E.D. Wis. 2004), provides a compelling argument for why the defendant's statements to Mr. Hammock do not qualify as compromise negotiations. In that case, the court admitted testimony of a discussion between the plaintiff's president and the defendant's CEO during which the defendant's CEO inquired if the dispute could be "resolved between [the] two businessmen." Id. at 895. The court explained that the testimony was admissible since both sides had not assented to engage in settlement discussions, noting that one party cannot make another party privy to settlement negotiations against the other party's will. Id. The discussions between the defendant and Mr. Hammock resemble the facts in Lee Middleton Original Dolls, and this Court likewise concludes that the defendant could not make Mr. Hammock, on behalf of the fraternity, party to settlement negotiations without the fraternity's consent. Id. And since Mr. Hammock did not engage the defendant with the fraternity's authorization for the purpose of attempting to monetirly resolve his

9

concerns, his discussions with the defendant did not amount to settlement negotiations and accordingly they were properly admitted into evidence.  Id.

Finally, the Court reiterates its conclusion as to admissibility of the statements between the defendant and Mr. Hammock expressed during the trial—the testimony was admitted to allow the government to demonstrate the defendant's consciousness of guilt and his continuing efforts to conceal his crimes.  See C & E Servs., Inc. v. Ashland, Inc., 539 F. Supp. 2d 316, 320-21 (D.D.C. 2008) (admitting a settlement offer in order to show the defendants' "misrepresentation, half truths, and deception[] . . . ").  In other words, Mr. Hammock's testimony was not admitted to prove the validity, invalidity, or the amount of the fraternity's claims against the defendant, but rather to show that the defendant knew he had misappropriated the fraternity's funds and to expose his efforts to prevent the fraternity from discovering the crimes he had committed.  The testimony of Mr. Hammock was, therefore, admitted for purposes not prohibited by Rule 408.  Id. at 321.

At bottom, the defendant has provided no support for his argument that his conversations with Mr. Hammock were improperly admitted.  He does not address the Court's ruling to admit the evidence for the purpose of demonstrating his consciousness of guilt and to show his efforts to conceal his crimes from the fraternity, purposes not prohibited by Rule 408. The defendant bears the burden of rebutting the presumption of a valid conviction, Libby, 498 F. Supp. 2d at 3,  and he has failed to do so.  Therefore, the defendant's motion for release pending appeal must also be denied because he  has not satisfied the second prong of 18 U.S.C. § 3143(b)(1), having  failed to raise a substantial question of law[4].  Id.

---

[4] Even if the defendant could have show that the Court improperly admitted his statements to Mr. Hammock, the error was harmless.  As noted earlier, the evidence of the defendant's guilt was nothing short of overwhelming, and this would have been the case even without the admissions of his statements to Mr. Hammock. See Unites States v. Johnson , 519 F.3d 478, 484 (D.C. Cir. 2008) (holding that for the defendant to be prejudiced the erroneously admitted evidence must have affected the outcome of the trial).

## IV. Conclusion

for all the reasons set forth above, the defendant's motion for release pending appeal is

DENIED.

**SO ORDERED** this 16th day of October, 2009.

REGGIE B. WALTON
United States District Judge